EDWARD HECKEL, PLAINTIFF IN ERROR, v. THEODORE SANDFORD, DEFENDANT IN ERROR.

The defendant had moneys raised by taxation for public purposes, which he had received as treasurer of the "commissioners of the Belleville polling district," a governmental corporation, whose functions were confined to a portion of Belleville township. *Held*, that that corporation having been dissolved, it was the defendant's duty, under "An act concerning townships and township officers," approved April 21st, 1876, (*Pamph. L., p.* 297,) to pay those moneys to the township treasurer.

In debt.   On error to the Essex Circuit.

For the plaintiff in error, *A. Q. Keasbey.*

For the defendant in error, *J. W. Taylor.*

The opinion of the court was delivered by

DIXON, J.   This writ of error brings up the record of a judgment in the Essex Circuit Court, containing exceptions

to the rulings of the judge at the trial. The suit was instituted by the treasurer of the township committee of the township of Belleville, in that county, against the defendant, who, as treasurer of the commissioners of the Belleville polling district, had received moneys raised for those commissioners by taxation, of which a balance, $3279.97, the moneys in controversy, remains in his hands. The plaintiff based his right of recovery upon the fourth section of "An act concerning townships and township officers," approved April 21st, 1876, (*Pamph. L.*, *p.* 297,) which enacts " that in all cases where money raised by taxation remains in the hands of any person or persons, unexpended, and the same cannot, for any reason, be used for the purpose for which it was raised, and in all cases in which the money so raised is held in trust for the town or township, and is not needed or cannot be used for the purpose for which it was raised, every person or persons holding such moneys shall, on demand, pay the same to the treasurer of the town or township committee, who, in case of refusal, is hereby authorized to sue for and collect the same, in any court having jurisdiction thereof, in his own name as such treasurer, to and for the use of the said town or township; and the said treasurer shall hold the said moneys subject to the order of the said committee, and the committee may appropriate and use the same for the benefit of said town or township as they may deem best."

The plaintiff's action was sustained in the court below.

The applicability of this statute to the facts proved at the trial, and its constitutionality, if so applicable, are the main questions raised in this court.

By force of two acts of the legislature, passed in 1868, (*Pamph. L.*, *pp.* 1152, 1153,) the then township of Belleville was divided into the Franklin polling district, the Woodside polling district, and what was thereafter known as the Belleville polling district. On April 6th, 1871, (*Pamph. L.*, *p.* 1475,) "An act authorizing the appointment of commissioners to institute and make local improvements in that portion of the township of Belleville included within the boundaries of

the Belleville polling district," was passed, by which there were granted to the commissioners to be chosen under it considerable power in regard to streets and roads in the district: the power to issue bonds binding on the township of Belleville; to direct the assessor of Belleville township to assess upon the taxable property within the district a sum not exceeding $5000, for the purpose of making surveys and maps, and doing other work necessary to lay out streets and highways in the district; the power to appoint a street commissioner to take the place of overseers of roads in the district, whose office was, by the act, abolished; and the power to order raised and to expend all the road taxes in the district.

On April 4th, 1873, (*Pamph. L., p.* 716,) an act to revise the above act was passed, by which the commissioners of the Belleville polling district were constituted a body politic and corporate, and their powers somewhat enlarged, and the bonds which they were authorized to issue were to be binding upon all the property within the district. Under these statutes, the money in controversy was raised, partly under the power to raise money for doing work preliminary to laying out streets in the district, and partly under the power to raise road tax for the repair of highways therein.

By two acts, one approved February 18th, 1874, (*Pamph. L., p.* 191,) and the other approved March 5th, 1874, (*Pamph. L., p.* 241,) a part of the township of Belleville, including a small portion of the Belleville polling district, was set off and made the township of Franklin, with all the rights, powers, privileges and advantages belonging to the townships in the county of Essex.

Upon these statutes arises the first question in the cause, viz., whether so much of the Belleville polling district as was embraced within the limits of Franklin township was withdrawn from the jurisdiction of the district commissioners.

I think it was. The statutes in regard to the district speak of it and manifestly contemplate it as a division of the township of Belleville, and some of the powers of the commissioners are required to be exercised by means of officers of

that township.   Moreover, the powers of the commissioners are incompatible with the ordinary powers of township committees, so that they could not both operate harmoniously in the same territory, and hence the former must give way to the latter.

On March 26th, 1874, (*Pamph. L.*, *p.* 493,) another portion of the Belleville polling district was severed and formed into the Montgomery polling district, and as to this, the Belleville district acts were expressly repealed.

On March 27th, 1874, (*Pamph. L.*, *p.* 674,) an act was passed, creating the city of Belleville, and organizing its local government, embracing within its provisions all the territory and inhabitants which, at that time, constituted the Belleville polling district.   The local government which it was designed to establish was utterly inconsistent with the exercise of the functions of the Belleville district commissioners, and therefore its repeal of all laws inconsistent with its provisions must be regarded as putting an end to all acts under which those commissioners could operate.   The saving of "all rights, dues or privileges which the township of Belleville, or the Belleville polling district, or any person or persons were entitled to," cannot be construed to prevent this result: for if that would save the commissioners, so it would save the township officers, and thus would establish, throughout the limits of the proposed city, two incongruous authorities.   The rights, dues and privileges preserved were not governmental powers.

On February 23d, 1876, (*Pamph. L.*, *p.* 481,) the act organizing the city of Belleville was repealed, but it was enacted that such repealer should not revive the commissioners' acts already referred to, which, this statute declared, had been repealed by the city charter.   By this repeal, however, the township of Belleville was rehabilitated, and the powers of the township over what had been the Belleville polling district were revived.   An act, passed April 10th, 1876, (*Pamph. L.*, *p.* 495,) recognized these results.

This review of legislation has been necessary in order to

elucidate what I regard as proper deductions from the facts and views thus far stated, viz., that the moneys in question were raised by taxation; that they remain in the hands of one who received them as an officer whose functions were confined within the limits of Belleville township, and who held them subject to the control of officers whose functions were also so bounded; that the offices of all these persons are abolished, so that this money cannot be used by them for the purposes for which it was raised; and that so far as the powers which they possessed, and under which they raised this money, are confided to any local authorities, they belong to the officers of the township of Belleville.

Such a case is, I think, within the purview of the act of April 21st, 1876, upon which this suit rests; and that act, therefore, made it the duty of the defendant to pay over to the plaintiff the money in his hands, unless there be something in the constitution which deprives the legislative will of force in this case.

A little reflection upon plain and well-settled principles will show that there is no such constitutional provision.

The defendant was a public officer, holding his office under an act of the legislature; as such only had he any right to retain the moneys in controversy. The corporation whose immediate servant he was, itself was created for public ends by the same legislative act, and this act was subject to modification and repeal at the will of the power that framed it. By that will, the rights of the defendant as an officer, and the very existence of the corporation, might lawfully be, and they have been, abolished.

The money was raised under the taxing power of the legislature, not for any private purpose of the corporation, but for a public governmental purpose—the laying out and repairing of highways; one in which the citizens of all the state have a legal interest of the same character as that of those residing in the neighborhood.

Under such circumstances, the legal control of the legislature over the money is almost absolutely untrammeled.

Heckel v. Sandford.

The money has, indeed, no other legal owner. Parties seeking to enforce contracts with the corporation may be entitled to challenge the legislative power, and, in abstract justice, it may be conceded that the money should be devoted to the purposes for which it was raised, but the defendant cannot be heard against the legislature, either in defence of the rights of creditors, or the claims, in abstract justice, of the tax-payers. As he is but the agent of the state in his custody of the funds, he performs his whole duty in the matter when he makes that disposition of them which the state commands. If there be any claims to which these moneys can be subjected, such claims are not enforceable against the defendant, but they will follow the moneys into whosesoever hands he may lawfully transfer them.

Having, therefore, concluded that the legislature has directed him to pay these moneys to the plaintiff, it was his duty so to do.

As to the defendant's claim that he should be allowed to retain, out of these moneys, the expenses for counsel fees which he has incurred in consequence of his doubts as to his legal duty in the premises, I know of no authority for such a course in a court of law.

The judgment below should be affirmed.

*For affirmance*—THE CHANCELLOR, CHIEF JUSTICE, DIXON, REED, SCUDDER, VAN SYCKEL, WOODHULL, CLEMENT, DODD, GREEN, LILLY. 11.

*For reversal*—None.